# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN MAE POLK, | Case No.  1:12-cv-01156-DAD-BAM (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES |
| v. | |
| LATTIMORE, *et al.*, | |
| Defendants. | (ECF No. 147) |
| | **FOURTEEN (14) DAY DEADLINE** |

## FINDINGS AND RECOMMENDATIONS

**I.      Background**

Plaintiff Susan Mae Polk ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds on Plaintiff's fifth amended complaint against Defendant Baron for retaliation in violation of the First Amendment and deliberate indifference in violation of the Eighth Amendment, arising from allegations that he placed a "snitch jacket" on Plaintiff by informing Inmate Miranda that Plaintiff had reported Inmate Miranda's threats on Plaintiff's life.

On July 23, 2021, Defendant filed a motion for summary judgment on the ground that Plaintiff failed to properly exhaust administrative remedies before filing suit as required by the Prisoner Litigation Reform Act.[1]  Fed. R. Civ. P. 56(c), *Albino v. Baca*, 747 F.3d 1162, 1166 (9th

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988); *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988).  (ECF No. 147-8.)

1    Cir. 2014) (en banc), *cert. denied*, 574 U.S. 968 (2014).  (ECF No. 147.)  Following three

2    extensions of time, Plaintiff filed an opposition on December 10, 2021.  (ECF No. 159.)

3    Defendant filed a reply on December 16, 2021.  (ECF No. 160.)

4         The motion for summary judgment is deemed submitted.  Local Rule 230(l).

5    **II.    Legal Standards**

6         **A.    Statutory Exhaustion Requirement**

7         Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action

8    shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal

9    law, by a prisoner confined in any jail, prison, or other correctional facility until such

10   administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is

11   required regardless of the relief sought by the prisoner and regardless of the relief offered by the

12   process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to

13   all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

14        The failure to exhaust is an affirmative defense, and the defendants bear the burden of

15   raising and proving the absence of exhaustion.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Albino*,

16   747 F.3d at 1166.  "In the rare event that a failure to exhaust is clear on the face of the complaint,

17   a defendant may move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise,

18   the defendants must produce evidence proving the failure to exhaust, and they are entitled to

19   summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most

20   favorable to the plaintiff, shows he failed to exhaust.  *Id.*

21        Defendant must first prove that there was an available administrative remedy and that

22   Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th

23   Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to

24   Plaintiff to show something in his particular case made the existing and generally available

25   administrative remedies effectively unavailable to her.  *Williams*, 775 F.3d at 1191 (citing *Albino*,

26   747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of

27   exhaustion remains with Defendant.  *Id.* (quotation marks omitted).

28   ///

2

1        **B.      Summary Judgment Standard**

2        Any party may move for summary judgment, and the Court shall grant summary judgment

3   if the movant shows that there is no genuine dispute as to any material fact and the movant is

4   entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino*,

5   747 F.3d at 1166; *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each

6   party's position, whether it be that a fact is disputed or undisputed, must be supported by

7   (1) citing to particular parts of materials in the record, including but not limited to depositions,

8   documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

9   presence or absence of a genuine dispute or that the opposing party cannot produce admissible

10  evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

11  consider other materials in the record not cited to by the parties, although it is not required to do

12  so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir.

13  2001); *accord Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

14       The defendant bears the burden of proof in moving for summary judgment for failure to

15  exhaust, *Albino*, 747 F.3d at 1166, and he must "prove that there was an available administrative

16  remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172.  If the defendant

17  carries his burden, the burden of production shifts to the plaintiff "to come forward with evidence

18  showing that there is something in his particular case that made the existing and generally

19  available administrative remedies effectively unavailable to him." *Id.*  "If undisputed evidence

20  viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is

21  entitled to summary judgment under Rule 56." *Id.* at 1166.  However, "[i]f material facts are

22  disputed, summary judgment should be denied, and the district judge rather than a jury should

23  determine the facts." *Id.*

24  **III.    Discussion**

25       **A.      Summary of CDCR's Administrative Review Process**

26       At the relevant time, "[t]he California prison grievance system ha[d] three levels of

27  review; an inmate exhausts administrative remedies by obtaining a decision at each level." *Reyes*

28  *v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (repealed

1   June 1, 2020) & *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010)).  *See also* Cal. Code Regs.

2   tit. 15, § 3084.7(d)(3) ("The third level review constitutes the decision of the Secretary of the

3   California Department of Corrections and Rehabilitation on an appeal, and shall be conducted by

4   a designated representative under the supervision of the third level Appeals Chief or equivalent.

5   The third level of review exhausts administrative remedies….") (repealed June 1, 2020).

6        Pursuant to this system, an inmate may appeal "any policy, decision, action, condition, or

7   omission by the department or its staff that the inmate . . . can demonstrate as having a material

8   adverse effect upon his . . . health, safety, or welfare."  *Id.* at § 3084.1(a).

9        The process was initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal.  *Id.* at

10  § 3084.2(a).  In the appeal form, prisoners must list all staff members involved and describe their

11  involvement in the issue.  *Id.* at § 3084.2(a)(3).  If the inmate does not have the requested

12  identifying information about the staff member, he must provide any other available information

13  that would assist the appeals coordinator in making a reasonable attempt to identify the staff

14  member in question.  *Id.*

15          **B.      Allegations in Fifth Amended Complaint**

16       Plaintiff is currently housed at the California Institution for Women ("CIW") in Corona,

17  California.  The events in the fifth amended complaint are alleged to have occurred while Plaintiff

18  was housed at Central California Women's Facility ("CCWF") in Chowchilla, California.

19  Plaintiff has named Correctional Officer M. Baron as the sole defendant.  Plaintiff alleges as

20  follows:

21       Defendant Baron was Plaintiff's housing officer during the time inmates had access to the

22  Day Room and yard.  Inmate Janelle Miranda, Plaintiff's cellmate at the time, had a history of

23  violence against cellmates and was in the Mental Health Delivery System.

24       On July 20, 2008, Plaintiff again informed Defendant Baron that Inmate Miranda had

25  been threatening Plaintiff with great bodily harm.  This was Plaintiff's custom to do when such

26  threats arose and when attacked by inmates.  Defendant Baron did not take any steps to protect

27  Plaintiff or ensure her safety.  Instead, Defendant Baron ordered Plaintiff to return to the cell with

28  Inmate Miranda.

4

1    Defendant Baron informed Inmate Miranda that Plaintiff had told Baron that Plaintiff was

2    concerned for her own safety and that Miranda had threatened Plaintiff with great bodily harm.

3    Defendant Baron also informed Inmate Miranda and Plaintiff's other cellmates that Plaintiff was

4    "602ing" (filing grievances against) staff members.  Defendant Baron put what is known in prison

5    as a "snitch jacket" on Plaintiff by informing Inmate Miranda that Plaintiff had told him Miranda

6    was threatening Plaintiff's life.

7    On the evening of July 20, 2008, Inmate Miranda called Plaintiff a "snitch" and yelled at

8    Plaintiff for complaining to Defendant Baron that Miranda had been threatening Plaintiff.  Inmate

9    Miranda also yelled at Plaintiff for "602ing" staff.

10    Inmate Miranda was still yelling at Plaintiff and threatening Plaintiff for informing

11    Defendant Baron that Miranda had threatened Plaintiff's life and was ranting at Plaintiff about

12    "602ing" staff when Plaintiff went to the locked cell door for the 8 p.m. Closed-A Count.

13    Plaintiff's back was to Inmate Miranda when Miranda cut open Plaintiff's scalp by hitting

14    Plaintiff on the back of her head with a hard plastic cup while Plaintiff was standing by the cell

15    door for the count.

16    Plaintiff's scalp bled heavily, and she alleges she could have died from blood loss had she

17    not applied a compress to her scalp.  Plaintiff's tee-shirt was drenched with blood.  It took eight

18    staples in the Emergency Room of the Madera Community Hospital to close the wound.

19    Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive

20    damages.

21    **C.    Undisputed Material Facts (UMF)[2]**

22    1.  Plaintiff, an inmate of the California Department of Corrections and Rehabilitation

23    (CDCR) under CDCR No. X23159, was housed at the Central California Women's

24

---

25    [2] ECF No. 147-2.  Though Plaintiff made general and specific denials with respect to Defendant's Statement of Undisputed Material Facts, Plaintiff did not provide a separate statement of undisputed facts in her opposition.  Local Rule 260(a).  As a result, Defendant's Statement of Undisputed Facts in support of his motion for summary judgment is accepted except when brought into dispute by Plaintiff's verified fifth amended complaint and verified opposition to the motion for summary judgment.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence; *Johnson v. Melzer*, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

26

27

28

Facility (CCWF) from June 22, 2007 to September 24, 2009.  (Decl. of J. Thissen, ¶ 5.)

2.  The CDCR inmate administrative appeals process was available to and utilized by Plaintiff during her time at CCWF.  (Thissen Decl., ¶ 6; Decl. of Howard E. Mosely, ¶¶ 6–10, Ex. A.)

3.  CDCR's inmate administrative grievance process (until 2020), had three levels of review and inmates must submit their appeal on appropriate forms to exhaust their appeals through all three levels of review.  Cal. Code Regs., tit. 15 §§ 3084–3084.7 (2008).

4.  An inmate must submit an appeal within fifteen days of an event or happening that is grieved, must submit an appeal for further review within thirty days (twenty days at the second level or thirty days if the first level is waived) of an unsatisfactory lower-level response, and must cure deficiencies in grievances submitted if that appeal is screened out (rejected) within thirty days of that appeal's rejection.  Cal. Code Regs., tit. 15 §§ 3084–3084.7 (2008).

5.  CDCR's inmate appeals regulations require inmates to identify by name, title, or position each staff member alleged to be involved in the action or decision being appealed.  *Id.*

6.  The Office of the Appeals (OOA) screened in and issued decisions on twenty-four administrative appeals for Plaintiff between April 4, 2008 and May 3, 2010 that originated while she was housed at CCWF.  (Mosely Decl., ¶ 10, Ex. A.)

7.  Plaintiff submitted Appeal Log No. 0716718 an appeal of Grievance Log No. CCWF-07-01355.  (Mosely Decl., ¶ 11, Ex. B.)

8.  Plaintiff submitted Appeal Log No. 0729157 an appeal of Grievance Log No. CCWF-07-02078.  (Mosely Decl., ¶ 12, Ex. C.)

9.  Plaintiff submitted Appeal Log No. 0732541 an appeal of Grievance Log No. CCWF-08-00191.  (Mosely Decl., ¶ 13, Ex. D.)

10. Plaintiff submitted Appeal Log No. 0734000 an appeal of Grievance Log No. CCWF-08-00324.  (Mosely Decl., ¶ 14, Ex. E.)

11. Plaintiff submitted Appeal Log No. 0734049 an appeal of Grievance Log No. CCWF-08-00062.  (Mosely Decl., ¶ 15, Ex. F.)

12. Plaintiff submitted Appeal Log No. 0734059 an appeal of Grievance Log No. CCWF-07-02061.  (Mosely Decl., ¶ 16, Ex. G.)

13. Plaintiff submitted Appeal Log No. 0734176 an appeal of Grievance Log No. CCWF-08-00004.  (Mosely Decl., ¶ 17, Ex. H.)

14. Plaintiff submitted Appeal Log No. 0734234 an appeal of Grievance Log No. CCWF-08-00383.  (Mosely Decl., ¶ 18, Ex. I.)

15. Plaintiff submitted Appeal Log No. 0734296 an appeal of Grievance Log No. CCWF-08-00180.  (Mosely Decl., ¶ 19, Ex. J.)

16. Plaintiff submitted Appeal Log No. 0735709 an appeal of Grievance Log No. CCWF-08-00362.  (Mosely Decl., ¶ 20, Ex. K.)

17. Plaintiff submitted Appeal Log No. 0735710 an appeal of Grievance Log No. CCWF-08-00321.  (Mosely Decl., ¶ 21, Ex. L.)

18. Plaintiff submitted Appeal Log No. 0803638 an appeal of Grievance Log No. CCWF-08-00646.  (Mosely Decl., ¶ 22, Ex. A.)

19. Plaintiff submitted Appeal Log No. 0809740 an appeal of Grievance Log No. CCWF-08-00817.  (Mosely Decl., ¶ 23, Ex. M.)

20. Plaintiff submitted Appeal Log No. 0810082 an appeal of Grievance Log No. CCWF-08-01260.  (Mosely Decl., ¶ 24, Ex. N.)

21. Plaintiff submitted Appeal Log No. 0818991 an appeal of Grievance Log No. CCWF-08-01495.  (Mosely Decl., ¶ 25, Ex. O.)

22. Plaintiff submitted Appeal Log No. 0903241 an appeal of Grievance Log No. CCWF-09-00585.  (Mosely Decl., ¶ 26, Ex. P.)

23. Plaintiff submitted Appeal Log No. 0910017 an appeal of Grievance Log No. CCWF-09-00521.  (Mosely Decl., ¶ 27, Ex. Q.)

24. Plaintiff submitted Appeal Log No. 0910018 an appeal of Grievance Log No. CCWF-09-00468.  (Mosely Decl., ¶ 28, Ex. R.)

25. Plaintiff submitted Appeal Log No. 0911301 an appeal of Grievance Log No. CCWF-09-00906.  (Mosely Decl., ¶ 29, Ex. S.)

26. Plaintiff submitted Appeal Log No. 0911302 an appeal of Grievance Log No. CCWF-09-00774.  (Mosely Decl., ¶ 30, Ex. T.)

27. Plaintiff submitted Appeal Log No. 0911303 an appeal of Grievance Log No. CCWF-09-00862.  (Mosely Decl., ¶ 31, Ex. U.)

28. Plaintiff submitted Appeal Log No. 0911304 an appeal of Grievance Log No. CCWF-09-00738.  (Mosely Decl., ¶ 32, Ex. V.)

29. Plaintiff submitted Appeal Log No. 0912096 an appeal of Grievance Log No. CCWF-09-00731.  (Mosely Decl., ¶ 33, Ex. W.)

30. Plaintiff submitted Appeal Log No. 0916705 an appeal of Grievance Log No. CCWF-09-01109.  (Mosely Decl., ¶ 34, Ex. X.)

**D.      Discussion**

　　　　1.      Parties' Positions

Defendant argues that Plaintiff did not exhaust her administrative remedies because she did not submit an administrative grievance through the required levels of review asserting that Defendant Baron labeled her an informant or "snitch," which then exposed her to assaults by other inmates, as retaliation for Plaintiff's exercise of her First Amendment rights to grieve the actions of staff.  While Plaintiff submitted twenty-four grievances during the time she was housed at CCWF that were accepted for review at the third and final level of review, none of the grievances filed by Plaintiff mention Defendant Baron labeling Plaintiff a snitch, or allege that Defendant so-labeled Plaintiff in response to Plaintiff's filing of grievances against staff.  Defendant contends that Plaintiff's inmate appeal history confirms that she was familiar with CDCR's inmate appeals process, and it was available to her at CCWF.

Plaintiff argues in opposition that she exhausted what administrative remedies were available to her.  Specifically, Plaintiff contends that Defendant attached an administrative grievance dated August 5, 2008, CCWF-C-08-01260, as Exhibit N to the Mosely Declaration, (ECF No. 147-6, pp. 123–127), but failed to include the written statements Plaintiff submitted with it and Warden Lattimore's second level reply.  Plaintiff attaches a copy of the referenced documents as Exhibit A: Plaintiff's July 30, 2008 letter to CCWF Captain Schoonard with a cover

1   letter to Warden Lattimore, (ECF No. 159, pp. 17–22), and Exhibit B: Second Level Response to

2   Appeal Log No.: CCWF-C-08-01260, (*id.* at 23–26).  Plaintiff argues that in her written

3   statement, she provided details regarding CCWF officials placing a "snitch jacket" on her, as a

4   result of which inmates had subjected her to harassment, verbal and physical abuse, threats of

5   great bodily injury and death; Defendant Baron placed a snitch jacket on Plaintiff on July 20,

6   2008, and as a result Inmate Miranda cut open Plaintiff's scalp on that date.  In addition, on

7   October 3, 2008, during the then-mandatory interview to add detail to the grievance, she provided

8   Appeals Coordinator Assistant Miller with a detailed description of how on July 20, 2008,

9   Defendant Baron instigated violence by placing a "snitch jacket" on Plaintiff, resulting in Inmate

10  Miranda's assault.

11      Plaintiff further argues that prior to Defendant Baron placing a "snitch jacket" on her,

12  Plaintiff had filed grievances against the CCWF Appeals Coordinator, Tony Brown, for

13  destruction of the appeals (administrative grievance) process.  Plaintiff states that Brown refused

14  to process Plaintiff's grievances, threatened to punish Plaintiff for filing grievances against staff,

15  threatened to destroy Plaintiff's paperwork, falsely accused Plaintiff of "abusing" the appeals

16  process, and contrived to make it look like Plaintiff had abused the appeals process by counting

17  the grievance twice and by falsely claiming grievances were "duplicative" when they were not.

18  (ECF No. 159, pp. 9–10.)  Plaintiff argues that Brown intimidated her with threats, as did the

19  violence to which Plaintiff was subjected repeatedly and on July 20, 2008 for filing grievances,

20  and the fear Brown inspired in Plaintiff caused her to hesitate before filing a grievance and

21  colored the way Plaintiff filed a grievance on the July 20, 2008 incident.  Plaintiff refers to

22  allegations in the original complaint regarding Brown's threats and how they intimidated her, and

23  argues that she was not required to exhaust due to threats of retaliation and improper screening of

24  her grievances.

25      In reply, Defendant argues that the allegations contained in the letters Plaintiff claims that

26  she attached to CCWF-C-08-01260 differ from those asserted in the grievance itself, and Plaintiff

27  lacks any evidence that these letters were submitted or received.  Even assuming all favorable and

28  justified inferences in Plaintiff's favor, Defendant contends that the exhibits and their contents

9

1   confirm that the only subject matter of CCWF-C-08-01260 was the issuance of a CDCR 115-

2   Rules Violation Report along with Plaintiff's claim that other inmates were assaulting her.

3   Nothing written by Plaintiff on the grievance form had anything to do with Defendant Baron or

4   Plaintiff's current claim against him, and thus failed to identify the issue she was grieving to alert

5   the prison to the problem and facilitate its resolution.  Defendant further argues that Plaintiff has

6   provided no evidence to support her claims that the grievance system was made unavailable to her

7   due to Brown's actions, and Plaintiff may not incorporate her prior dismissed complaints as

8   evidence of exhaustion.

9                           2.   <u>CCWF-C-08-01260</u>

10       It appears that the only grievance at issue—the only grievance Plaintiff identifies as

11   pertinent to the claims in this action—is CCWF-C-08-01260.  (ECF No. 147-6, pp. 123–127.)

12   Viewing the evidence presented in the light most favorable to Plaintiff, the Court finds that

13   Plaintiff attached additional written statements to the original grievance form.  In particular, the

14   Court notes that Plaintiff's typewritten description of the problem in the grievance includes a

15   reference to attached documents, "(See attached)," although Defendant's Exhibit N includes no

16   additional pages.  (*See id.* at 124.)  The Court, therefore, reviews Plaintiff's handwritten letters to

17   Captain Schoonard and Warden Lattimore, (ECF No. 159, pp. 17–22), as though included with

18   the original grievance.

19       In CCWF-C-08-01260, the action Plaintiff requests to address the problem described is

20   "Transfer to CIW, federal pen, or out of state prison. Reversal of the guilty finding."  (ECF No.

21   147-6, p. 126.)  Plaintiff's letter to Captain Schoonard similarly states that Plaintiff submitted a

22   602 for a transfer to the CDC Director, and requests that Captain Schoonard recommend a

23   transfer, place Plaintiff in 512 so she will be housed among different inmates, and provide a

24   chrono giving Plaintiff permission to use her typewriter during her cell during normal business

25   hours and in the Day Room at other times as well as during the day.  (ECF No. 159, pp. 19, 21.)

26   Based on the foregoing, the Court cannot find that any relief requested in the grievance itself or

27   the attachments submitted by Plaintiff would place prison officials on notice that Plaintiff was

28   requesting any action be taken with respect to Defendant Baron specifically.  Rather, Plaintiff

1    provided context for her appeal of the Rules Violation Report, but her ultimate purpose in filing

2    CCWF-C-08-01260 was to be transferred to another housing unit or facility and to reverse the

3    guilty finding on the RVR.

4            Turning to the attachments to CCWF-C-08-01260, the Court reviews the handwritten

5    letters in context, including the grievance form and the contents of all pages of the letters.

6    Although Plaintiff references the assault by Inmate Miranda on July 20, 2008, and allege that

7    Defendant Baron put a snitch jacket on Plaintiff, these allegations do not appear related to one

8    another as set forth in the letter to Captain Schoonard.  The letter reads, in relevant part:

9            On 7/20/08, as you are aware, I was hit with a plastic cup.  I received eight staples

10           at Madera Community Hospital.  It was witnessed by Pat in 1 low.  Again, it was
             entirely unprovoked.

11           Nichols in 3 low commented afterwards that if she had been there, she would

12           have beaten me up.  She said that she can get away with murdering me because
             she is in CCCMS.  She has been relentlessly inciting violence against me, since

13           C/O Baron put a snitch jacket on me.

14   (*Id.* at 19–20 (unedited text).)  Although Plaintiff states she was hit with a plastic cup (by Inmate

15   Miranda), it was Inmate Nichols who is described as "relentlessly inciting violence" against

16   Plaintiff after Defendant Baron put a snitch jacket on her.  Based on this one excerpt, it is not

17   apparent that the assault by Inmate Miranda was the result of any action by Defendant Baron.

18           Furthermore, this is the only mention of Defendant Baron placing a snitch jacket on

19   Plaintiff in the letters to Captain Schoonard and Warden Lattimore.  While Plaintiff states "I have

20   been subjected to a pattern of harassment by some inmates, who appear to be acting on rumours

21   that I am a snitch," (*id.* at 17), and "[r]umour mongers are labelling me as a 'snitch,'" (*id.* at 19),

22   and then requests to be transferred so she is not housed among inmates "who don't want me in

23   their rooms as I have a 'snitch label,'" (*id.* at 21), these statements are buried in six pages of other

24   significant complaints Plaintiff raises regarding assaults by other inmates, a lack of a quiet

25   location to type legal filings, her decision to appeal the guilty finding on the 115 from February

26   13, 2008, and requests to clarify her record regarding enemy concerns, among other issues.  This

27   laundry list of other complaints, and Plaintiff's more generalized complaints that she was being

28   subjected to violence at the hands of other inmates, combined with Plaintiff's requests only for a

                                                    11

1    transfer and reversal of the RVR guilty finding, did not place prison officials on notice of the

2    specific claims raised against Defendant Baron in this action.

3        The Court further agrees with Defendant that a review of the Second Level Response to

4    CCWF-C-08-01260, as well as Plaintiff's summary of her reasons for dissatisfaction with the

5    Second Level Response, point to the same.  The Second Level Response describes Plaintiff's

6    Appeal Issue as "appealing the finding of guilt on . . . Rules Violation Report (CDC 115), log

7    number 08-B-02-050" and the Action Requested as "a transfer to California Institution for

8    Women, a Federal Prison, or an out-of-state prison.  You are requesting reversal of the guilty

9    finding."  (ECF No. 159, p. 23.)  The Appeal Response comprises two and a half single-spaced,

10   typed pages describing the February 13, 2008 events that led to the RVR, Plaintiff's statements

11   during the interview conducted for the Second Level review, the process followed during

12   adjudication of the RVR, and determination that the finding of guilt was appropriate.  (*Id.* at 24–

13   26.)  At no point does the Second Level Response identify Defendant Baron as a relevant

14   individual, or state that Plaintiff identified any concerns with being labeled a snitch or facing

15   retaliation in any form for filing grievances or staff complaints.

16       In her reasons for dissatisfaction with the Second Level Response, Plaintiff states:

17           Please see attached statement dated 10/28/08 for a complete response.  In sum, I
18           was not given a lawful order to lockdown.  I asked to declare enemies against
             women who had battered me and threatened me with great bodily harm who are in
19           CCWF B-yard.  One inmate had threatened my life.  I asked for protective
             custody, and I was pepper sprayed for it and given a 115.
20

21   (ECF No. 147-6, p. 127.)  The Court notes that no attached statement included was in

22   Defendant's or Plaintiff's exhibits.  Again, Plaintiff does not identify any concerns regarding

23   retaliation, being labeled a snitch, or Defendant Baron, and does not contend that these issues

24   were neglected by the Second Level Response.  At issue in the grievance is Plaintiff's generalized

25   concern over violence from other inmates and her desire to overturn the RVR.

26       It is true that under the PLRA, a grievance "suffices if it alerts the prison to the nature of

27   the wrong for which redress is sought."  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010)

28   (quoting *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009)).  However, the Court finds that

1   Plaintiff's single statement that Defendant Baron placed a snitch jacket on her at some

2   unspecified date, buried among six pages of other allegations, and attached to a grievance form

3   that makes no mention of Defendant Baron or any issue with Plaintiff being labeled a snitch or

4   facing violence from other inmates, as a result of that label, was not sufficient to alert the prison

5   that these particular claims were at issue in this particular grievance.  Therefore, CCWF-C-08-

6   01260 fails to exhaust Plaintiff's retaliation or deliberate indifference claims against Defendant

7   Baron.

8              3.      Availability of Grievance Process

9       Plaintiff also claims that the grievance process was made unavailable to her due to

10   improper screening and threats of retaliation by CCWF Appeals Coordinator Brown. Plaintiff

11   largely relies upon allegations made in the original complaint through the fourth amended

12   complaints, which Plaintiff attempts to incorporate by reference.  Even accepting Plaintiff's prior

13   complaints, now superseded by the fifth amended complaint, Plaintiff has failed to present more

14   than her own conclusory allegations, unsupported by other evidence in the record. Plaintiff has

15   failed to provide any evidence, other than the superseded complaints, to support her claim of the

16   grievance process unavailability. *See Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003)

17   ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *F.T.C.

18   v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997)

19   ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

20   insufficient to create a genuine issue of material fact.").  The fact that Plaintiff relies upon

21   multiple amended complaints in addition to the allegations in her opposition to Defendant's

22   motion for summary judgment does not convert these statements from self-serving affidavits to

23   factual data or supporting evidence.

24       Plaintiff also relies on Appeal Log No. CCWF-B-08-00383, in which Plaintiff claimed

25   that Brown was obstructing the appeals process by pretextually screening out Plaintiff's claims,

26   warning Plaintiff for abusing the appeals process, and mislabeling emergency appeals as non-

27   emergency appeals to evade processing the appeals, (ECF No. 147-6, pp. 90–93; Plaintiff's

28

1    Exhibit C, [3] ECF No. 159, pp. 27–33), as support for her contentions that the grievance process

2    was unavailable to her.  However, the mere fact that such a grievance was filed does not raise an

3    issue of fact that the grievance process was effectively unavailable to Plaintiff.  As Defendant

4    argues, the Second Level Response provides evidence that the institution conducted a thorough

5    investigation of Plaintiff's allegations and found that Brown's response—specifically, the

6    issuance of a warning letter—was justified as a result of the number of grievances Plaintiff had

7    submitted.  (ECF No. 159, pp. 29–33.)

8            Further, the evidence before the Court, uncontested by Plaintiff, reveals that Plaintiff had

9    ample opportunity to submit a grievance related to the claims in this action.  Plaintiff submitted

10   twenty-four administrative appeals between April 4, 2008 and May 3, 2010 that originated while

11   Plaintiff was housed at CCWF, all of which were screened in and issued decisions by the OOA.

12   As Plaintiff has argued, many of her administrative grievances were screened out or rejected for

13   various reasons, indicating that she submitted far more than twenty-four appeals during that time.

14           Plaintiff argues that Brown's actions, and the fear Plaintiff alleges that those actions

15   inspired, may have caused Plaintiff to "hesitate before filing a grievance" and "colored the way

16   [she] [filed a grievance] on the July 20, 2008 incident." Plaintiff, however, does not allege that

17   she was prevented from filing a grievance with respect to this incident.  In addition, Plaintiff does

18   not allege that CCWF-C-08-01260, the only grievance she identifies as relating to the claims at

19   issue in this action, was improperly screened or otherwise processed such that it made her

20   administrative remedies unavailable.  Plaintiff instead contends that CCWF-C-08-01260, in fact,

21   provided sufficient detail to exhaust her claims, (ECF No. 159, p. 15), and she does not argue that

22   she was prevented, by fear of reprisal or due to improper processing, from filing a different

23   grievance that more explicitly set forth her claims against Defendant Baron.  Based on the

24   evidence in the record, the Court finds that Plaintiff has not raised a dispute of material fact with

25   respect to the availability of the grievance process, and she was therefore required to exhaust her

26   administrative remedies with respect to her claims against Defendant Baron.  As discussed above,

27
_____
[3] As discussed above, the Court views the evidence in the light most favorable to Plaintiff and accepts the contents of
28   Plaintiff's Exhibit C as true and correct copies of any attached statements included with the original grievance and
the Second Level Response from the institution.

1 Plaintiff failed to do so.

2 **IV.     Recommendation**

3      Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion for

4 summary judgment for failure to exhaust, (ECF No. 147), be GRANTED.

5      These Findings and Recommendations will be submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

7 **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

8 file written objections with the Court.  The document should be captioned "Objections to

9 Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file

10 objections within the specified time may result in the waiver of the "right to challenge the

11 magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

12 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

13

14 IT IS SO ORDERED.

15   Dated:   **February 24, 2022**          /s/ Barbara A. McAuliffe

16                                        UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

15